93 N.J. Super. 380 (1967)
226 A.2d 16
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH F. ZUCCONI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 1966.
Decided January 13, 1967.
*381 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Frank M. Lario argued the cause for appellant.
Mr. Joseph A. Hoffman, Assistant Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General, attorney; Mr. Remo M. Croce, Deputy Attorney General, on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Defendant was convicted in a municipal court of careless driving in violation of R.S. 39:4-97, and fined. He appealed to the County Court where, after a trial de novo, he was again convicted and fined $100. He appeals.
His principal argument is that his oral and written admissions to the police that he was the driver of the automobile in question should not have been permitted in evidence because the police did not follow the rules laid down in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, *382 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when he was questioned.
The accident which led to the charge happened on December 4, 1964. Defendant's Chevrolet, occupied by him and Anthony and Angelo Lionelli, struck a curb and swung around into the path of another car. In the resulting collision Anthony was killed and defendant seriously injured. The record does not show what happened to Angelo or why he did not testify.
Defendant was removed to the hospital by ambulance. State Trooper Townsend, assigned to investigate the crash, testified he came to the hospital several times to interview defendant but found him unable to talk until December 16. On that date, while Townsend was "still investigating" the case, defendant told him that he was driving the car and gave Townsend his version of how the accident happened. On December 20 while defendant was at home, having been discharged from the hospital, Townsend again interviewed defendant, recorded his statement in longhand, and had defendant read, correct and sign it. Townsend then said he would have the statement typed and would be back. He returned later the same day with a typed copy of the earlier statement and asked defendant to read it, and sign it if it was correct. The statement begins with the following:
"Q. * * * Do you Mr. Joseph Zucconi voluntarily desire to make a statement regarding this accident of your own free will and accord, fully realizing the importance of such statement to the state and all concerned?
A. Yes."
The defendant signed the statement in the presence of members of his family. The statement does not admit any wrongdoing, but it does admit that defendant drove the car.
At the trial defendant was represented by counsel. He testified that it was the deceased Anthony Lionelli who drove the car. The State admits that without defendant's admissions it could not prove that defendant drove the car. The State also *383 admits that defendant had no counsel when he made the admissions; that he was not told that he had a right to counsel or offered one; and that he was not warned that what he said might be offered in evidence against him. On the other hand, defendant admits that he did not ask for counsel.
The trial in the County Court took place on March 7, 1966 and the trial in the municipal court even earlier. For that reason alone Miranda did not apply to the case at bar. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, 892-893 (1966). Escobedo did not apply because defendant was not in custody and did not ask for counsel. State v. Ordog, 45 N.J. 347, 361 (1965); State v. Vigliano, 43 N.J. 44, 50-52 (1964). See also State v. Ninneman, 179 Neb. 729, 140 N.W.2d 5 (Sup. Ct. 1966), certiorari denied 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 72 (1966).
We hold that even though defendant was disabled, he was not under arrest, in custody, or otherwise deprived of his freedom by the authorities when he made the admissions, and that Miranda (and, a fortiori, Escobedo) would not have applied to this case even if the trial had taken place after Miranda was decided.
In Miranda the Court said:
"* * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (86 S.Ct., at p. 1612 (1966); emphasis supplied)

* * * * * * * *
"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required * * *." (Ibid., at p. 1630; emphasis supplied.) *384 Footnote 46 at 86 S.Ct., at page 1630 of the opinion is indicative of what the court had in mind:
"The distinction and its significance has been aptly described in the opinion of a Scottish court: `In former times such questioning, if undertaken, would be conducted by police officers visiting the house or place of business of the suspect and there questioning him, probably in the presence of a relation or friend. However convenient the modern practice may be, it must normally create a situation very unfavourable to the suspect.' Chalmers v. H.M. Advocate, [1954] Sess. Cas. 66, 78 (J.C.)"
See also People v. Tanner, N.Y.L.J., November 15, 1966 (N.Y. Sup. Ct.); Cox, "The Supreme Court, 1965 Term," 80 Harv. L. Rev. 91, 201-207 (1966); Sobel, The New Confession Standards, pp. 56-63 (1966); Pope, "Escobedo, then Miranda and now Johnson v. United States," 40 F.R.D. 351 (1966); Note, "Developments In the Law  Confessions," 79 Harv. L. Rev. 935, 1007-1008 (1966); Note, 78 Harv. L. Rev. 217, 223 (1964).
However, the State argues that, in any event, Miranda, Escobedo, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and similar cases do not apply to motor vehicle violations. In view of the importance of the question, we shall consider this argument.
Defendant argues that an offense under the Motor Vehicle Act is the equivalent of a crime and therefore one accused of such an offense is entitled to all of the constitutional rights and privileges afforded defendants in criminal cases. It is true that prosecutions under the motor vehicle act have been called "quasi-criminal" and have often been equated with criminal prosecutions. But that has always been with reference to specific issues. See State v. Laird, 25 N.J. 298 (1957); State v. Ring, 85 N.J. Super. 341 (App. Div. 1964); Varlaro v. Schultz, 82 N.J. Super. 142 (App. Div. 1964); State v. Francis, 67 N.J. Super. 377 (App. Div. 1961); State v. Witter, 33 N.J. Super. 1 (App. Div. 1954); State v. McCarthy, 30 N.J. Super. 6 (App. Div. 1954); Unger v. Fanwood, 69 N.J.L. 548 (Sup. Ct. 1903). See also *385 City of Newark v. Pulverman, 12 N.J. 105 (1953); Borough of Ramsey v. Basil, 19 N.J. Misc. 555, 21 A.2d 860 (C.P. 1941).
When it has been necessary or desirable to do so, the courts have emphasized the fundamental difference between "quasi-crimes" and crimes, and refused to apply to the former doctrines applicable to the latter. In re Garofone, 42 N.J. 244, 246 (1964); State v. Currie, 41 N.J. 531 (1964); Sawran v. Lennon, 19 N.J. 606 (1955); State v. Maier, 13 N.J. 235 (1953); State v. Shoopman, 11 N.J. 333 (1953); Department of Conservation and Economic Development, etc. v. Scipio, 88 N.J. Super. 315 (App. Div. 1965); Huff v. C.W. Goddard Coal and Supply Co., 106 N.J.L. 19 (Sup. Ct. 1929); cf. State v. First Criminal Judicial District Court, 10 N.J. Misc. 723, 724, 160 A. 674 (Sup. Ct. 1932).
In State v. Maier, supra, defendant was charged in a municipal court with assault and battery. Prior to the enactment of N.J.S. 2A:170-26 in 1951 this was an indictable offense. He moved to dismiss the complaint on the ground that the statute was unconstitutional in that it deprived him of the rights of indictment and trial by jury. The motion was denied and he appealed. The Supreme Court affirmed in a lengthy and learned opinion which demonstrated beyond a doubt that from earliest times a distinction has been made and acted upon between petty criminal offenses and violations of police regulations and crimes, and protections, constitutional and otherwise, jealously preserved in the latter have been held not applicable or necessary in the former. The court quoted with emphasis the following from McGear v. Woodruff, 33 N.J.L. 213 (Sup. Ct. 1868):
"Indeed, extensive and summary police powers are constantly exercised in all the states of the Union for the repression of breaches of the peace and petty offences, and these statutes are not supposed to conflict with the constitutional provisions securing to the citizen a trial by jury. * * *."
*386 The parallel provisions of the United States Constitution have received similar construction. Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1887); Schick v. United States, 195 U.S. 65, 70, 24 S.Ct. 826, 49 L.Ed. 99, 102 (1904); District of Columbia v. Clawans, 300 U.S. 617, 625, 57 S.Ct. 660, 81 L.Ed. 843, 846 (1936). See also United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23, rehearing denied 377 U.S. 973, 84 S.Ct. 1642, 12 L.Ed.2d 742 (1964); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). But see District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930).
In Maier, supra, our Supreme Court pointed out how impractical it would be to treat all offenses as crimes:
"Broad though the jurisdiction of the justice of the peace was at common law both before and after 1776, it nevertheless was no more extensive than that of his modern successor, the municipal magistrate, embracing as it does the many violations of the motor vehicle and traffic laws, of the fish and game laws, of the ordinances of each municipality, of the disorderly persons law, of chapters 1 and 4 of the Poor Law (R.S., Title 44), of chapters 6 and 17 of Title 9 relating to children, of article 4 of chapter 5 of Title 30 relating to institutions and agencies, and `Offenses of a lesser grade or degree than a misdemeanor or as to which no indictment by a grand jury is required,' N.J.S. 2A:8-21. Each of these sources of the municipal magistrate's jurisdiction relates to offenses far too numerous to catalog. The Disorderly Persons Act alone, with which we are especially concerned, N.J.S. 2A:170-1 et seq., consists of 96 sections, many of which deal with offenses far more serious in nature than simple assault and battery. The magnitude at the local level of the jurisdiction over disorderly persons can best be comprehended by enumerating the titles of the offenses proscribed in the successive sections of the act, but before listing them two observations spring to mind, both of which are pertinent to our present inquiry: (1) how could our courts of general criminal jurisdiction possibly function effectively in our complicated urban civilization of today if they had exclusive jurisdiction over all of these offenses either with or without a jury; (2) how many of these offenses smack of common-law crimes or involve elements of them or are specialized instances of more general crimes? * * *." (at pp. 251-252)
In closing, the court said:
*387 "Under the Motor Vehicle Act a driver may be convicted of drunken driving in a summary proceeding before the magistrate and receive a maximum sentence of six months. This section of the statute has been held valid when attacked as depriving a person of his constitutional right to indictment and trial by jury, State v. Rodgers, 91 N.J.L. 212 (E. & A. 1917).
While reference has been made for the sake of completeness to Article I, paragraph 8 of the Constitution of 1844, and Article I, paragraph 10 of the Constitution of 1947, `In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury,' these sections cannot affect the statute here under review because a summary proceeding before a municipal magistrate is not a criminal prosecution." (at pp. 277-278)
Nearly all courts in which the question has arisen have recognized that there are offenses of so common and minor a nature that it would be impractical and unnecessary to bring in the full panoply of constitutional protections in dealing with them. Garofone v. State; State v. Currie; State v. Maier; City of Newark v. Pulverman, all supra; People v. Letterio, 16 N.Y.2d 307, 266 N.Y.S.2d 368, 213 N.E.2d 670 (Ct. App. 1965), certiorari denied 384 U.S. 911, 86 S.Ct. 1354, 16 L.Ed.2d 364 (1966); McDonald v. Moore, 353 F.2d 106 (5 Cir. 1965); Winters v. Beck, 239 Ark. 1151, 397 S.W.2d 364 (Sup. Ct. 1965), certiorari denied 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137 (1966).
R.R. 8:3-3 requires the magistrate to "inform the defendant of his right to retain counsel or, if indigent, of the privilege of having counsel assigned * * *." Nevertheless, in Garofone, supra, our Supreme Court "reserve[d] * * * the question whether one tried for every disorderly persons offense must be furnished counsel." Cf. R.R. 1:12-9; State v. Dennis, 43 N.J. 418 (1964); State v. Kirkland, 82 N.J. Super. 409 (App. Div. 1964). In Pulverman, supra, the Supreme Court preferred to base its decision on the wording of our rules rather than on the State's well settled common law inability to appeal in criminal cases.
In People v. Letterio, supra, the court held that there is no constitutional requirement that a defendant charged with a traffic violation be apprised of his right to counsel and assignment *388 of counsel. In that case defendant had been convicted of speeding "and other violations of vehicle traffic law," the details of which are not given in the opinion. Chief Judge Desmond, joined by Judge Fuld, dissented, but even he indicated that he would apply the constitutional protections only "where imprisonment threatens" or "where there is possibility of substantial punishment." As a precedent for that point of view, Judge Desmond mentioned the "rule adopted January 29, 1964 by the Supreme Court of Massachusetts * * * requiring that a defendant be told about his right to counsel and assignment of counsel whenever charged with any crime for which a sentence of imprisonment may be imposed. See 347 Mass. 809." Such a distinction may be practical and have merit. Cf. In re Waiver of Death Penalty, 45 N.J. 501 (1965). In the case at bar, the maximum possible penalty was $200 or imprisonment for a period not exceeding ten days or both, N.J.S. 39:4-104, but only a fine was imposed. True, one may be jailed for nonpayment of a fine, but that alone is not deemed to make an offense even "quasi-criminal." Department of Conservation and Economic Development v. Scipio, supra, 88 N.J. Super. 315.
It has been suggested that a distinction might be made upon the basis of felony versus misdemeanor, which in our terms would be high misdemeanor versus misdemeanor, but that has received scant approval. McDonald v. Moore, supra; Harvey v. State of Mississippi, 340 F.2d 263 (5 Cir. 1965). In Winters v. Beck, supra, Winters was arrested on a charge of "immorality," a "misdemeanor" under an ordinance of Little Rock, Arkansas. He was tried, convicted and sentenced to 30 days in jail and a $254 fine, without counsel and without being advised of the right to counsel. The Supreme Court of Arkansas denied relief, holding that the constitutional rule of Gideon v. Wainwright, supra, does not apply in misdemeanor cases. The United States Supreme Court denied certiorari, Justices Black and Stewart dissenting. Justice Stewart filed an opinion in the course of which he said: "I do not suggest what the ultimate resolution of this problem *389 should be, but I do suggest that the answer cannot be made to depend upon artificial or arbitrary labels of `felony' or `misdemeanor' attached to criminal offenses by 50 different States."
In McDonald v. Moore, supra, defendant was charged with two illegal sales of liquor. She pleaded guilty without being offered counsel and was sentenced to a fine of $250 or six months in jail on each charge. She was unable to pay the fine. It was held she should have been offered counsel and her conviction was set aside. The court discussed the various formulae suggested to solve the problem and, finding none applicable to the facts before it, concluded: "We are without any authority authorizing the announcement of a petty offense rule." 353 F.2d, at p. 110. However, it must be noted that in McDonald defendant had been sentenced to two terms of six months each  whether consecutive or concurrent does not appear  and that the court said:
"* * * It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available. Even with the assistance of law students, whose services may be requested under some of the Criminal Justice plans, the demand might come near exceeding the supply." (at pp. 108-109)
In State v. Currie, supra, the question before the court was whether a prosecution in a municipal court for reckless driving and leaving the scene of an accident barred the prosecution of subsequent indictments for atrocious assault and battery arising out of the same fact situation. The court held it did not, in language which seems to us to bear on the question now before us.
After stressing that "No one currently questions the great worth of the constitutional safeguard against double jeopardy," Justice Jacobs said, for a unanimous court:
*390 "* * * the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals. * * * [41 N.J., at p. 539]
In State v. Shoopman * * * 11 N.J. 333 [1953] * * * Justice Wachenfeld stressed the fact that the offense charged in the municipal court was not a crime but a violation of a regulatory enactment `for the protection of the public at large as to the way and manner a motor vehicle is to be driven' (11 N.J., at p. 340); punishment for a first violation of that enactment could not at that time exceed a fine of $100 or imprisonment for 30 days or both * * *. [at pp. 541-542]
* * * Motor Vehicle Act violations are generally tried quickly and informally before local police magistrates who are in some instances not even attorneys at law. The evidential presentation may be very limited and the legal representation may likewise be very limited or entirely absent. The maximum fines and terms of imprisonment are minor in comparison to those fixed for violation of our Crimes Act and indeed they are even much lower than those which may be imposed for violation of our Disorderly Persons Act. The defendant, if found guilty, may for the most part anticipate the imposition of a moderate fine. In the light of these circumstances, the refusal to permit the proceeding before the magistrate to bar subsequent criminal prosecution for the death or the serious injury caused by the defendant is readily comprehensible. The elements of oppression or harassment historically aimed at by the constitutional and common law prohibition are not significantly involved; * * *." (at p. 543) (emphasis added)
Here, like in Currie, we think "the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." We do not think those considerations require that a traffic case be handled like a murder case.
It must be remembered that the Miranda rules are not contained in the Constitution but were adopted by the Supreme Court because the court felt them necessary to implement the constitutional rights to counsel and against self-incrimination. The question is not whether the rights against self-incrimination and to counsel exist in a motor vehicle prosecution, but whether the Supreme Court intended that in such a prosecution those rights must always be implemented with the Miranda rules.
*391 Miranda, of course, did not deal with a motor vehicle or other minor offense, but with kidnapping and rape. The other cases decided with Miranda also involved serious crimes (robbery: Vignera v. State of New York and Westover v. United States; kidnapping to commit robbery, rape and murder: State of California v. Stewart).
Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is the only case since Miranda in which the United States Supreme Court has dealt with the privilege against self-incrimination and the right to counsel in a case involving a minor offense, but we find nothing in that case which affects the one at bar.
The United States Supreme Court occasionally has given consideration to the practical, even in the field of constitutional rights. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Tehan v. United States ex rel. Shott, 382 U.S. 406, 15 L.Ed.2d 453, 86 S.Ct. 459 (1966). It is, of course, fully aware of the problems which would be entailed if Miranda were applied willy-nilly to all minor offenses. And it seems to us that the police practices described in Miranda as reasons for the adoption of the rules therein laid down have no pertinence to motor vehicle and similar minor cases. Therefore, until the United States Supreme Court says otherwise, we think we should assume, and we do believe, that its treatment of such cases as the one at bar would be based on what is practical and possible, and on the historical difference between such offenses and crimes. However, in view of the cautious approach of our Supreme Court to this exceedingly delicate and troublesome problem, it would be presumptuous for us to decide more than is required by the facts before us. In In re Garofone, 42 N.J. 244 (1964), the court said:
"* * * We reserve, however, the question whether one tried for every disorderly persons offense must be furnished counsel. Ordinarily counsel is supplied upon request, and it may be that the incidence of *392 indigency is much smaller because the cost of defense is less than on a charge of crime, but nonetheless the subject is troublesome, and since this case does not require a definitive decision, we think it better to withhold one." (at p. 246).
Here we have a prosecution under the motor vehicle act resulting in a fine. We hold that, at least in such a case, Miranda does not apply.
Defendant argues also that the decision of the trial court was against the weight of the evidence. We hold that it was not.
We have examined the other arguments of defendants but find none which requires discussion. The judgment is affirmed.