431 P.2d 691

**The STATE of Arizona, Appellee,**
**v.**
**Paul Vargas TELLEZ, Appellant.**
**No. I CA–CR 120.**

Court of Appeals of Arizona.
Sept. 21, 1967.
Rehearing Denied Oct. 16, 1967.

Darrell F. Smith, Atty. Gen., Anthony H. Mason, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by, Grant Laney, Deputy Public Defender, for appellant.

DONOFRIO, Judge

This appeal is from a verdict and judgment of the Superior Court of Maricopa County, finding the defendant guilty of receiving stolen property. A.R.S. § 13–621.

On March 9, 1966, at about 2:30 a.m., two City of Phoenix police officers were driving east on East Van Buren Street in a patrol car when they saw an automobile traveling west and weaving back and forth across the double center line in the street. The officers made a "U" turn and then stopped the automobile. The defendant was the driver and two women were in the car with him. He was directed to get out of the car, which he did. He appeared to be in a state of intoxication; he was unsteady on his feet; his eyes reacted poorly to light; he was incoherent and appeared to be numb. There was no odor of liquor on his breath, and when asked if he had been drinking he replied that he had not. He was then told to remove his coat and roll up his sleeves. The officers observed a fresh puncture mark in the bend of each arm. The defendant was then placed under arrest for driving while under the influence of narcotics. He was advised that he had a right to counsel and that whatever he said could be used against him, but he was not advised that he had a right to remain silent. At about this time he

told the officers that he had been taking "red devils". He was led by the officers to the police car where he was searched and a syringe and needle were found in his pants pocket. There was a red substance in the syringe. The officers then placed the defendant in the police car. After he denied having the keys to his car, the police officers acquired them from one of the women passengers in defendant's car. The officers then searched the interior of his car, but nothing was found. The key was then used to unlock and open the trunk. No specific permission had been given by defendant. The officers found an aluminum suitcase with "Cole's Medical Supply and Rental" on it, a green wooden box, a plastic gas can, a lunch kit, a shaving kit, gloves, a three-phase motor, and an overnight bag. One of the officers questioned defendant as to who owned the property and he claimed that the objects belonged to a friend. However, when asked, he could not remember the friend's name or identify him. The officers had not yet received a stolen property report and did not know the property was stolen. The property was taken from the trunk and impounded in the Police Property Locker for safekeeping as a matter of regular police routine. The defendant was taken to the police station.

On March 8, 1966, the driver of a truck belonging to Cole's Medical Supply and Rental had notified the police that a number of articles belonging to his employer had been taken from the truck he was driving. The following day the driver identified the items in the Police Property Room. They were the same ones taken from the trunk of defendant's car.

Shortly after noon on March 10 at the police compound the defendant was questioned by another police officer who identified himself as a member of the burglary detail. Defendant was informed of his constitutional rights, but the patrolman did not inform him specifically of his right to presence of counsel during interrogation, or of his right to the appointment of an attorney without cost, if necessary. The patrolman questioned defendant about the property and defendant again answered that it had come from a friend. Even after he was told that the property was stolen, he still answered that he could not tell who the friend was. The defendant was charged with receiving stolen property, a violation of A.R.S. § 13-621.

Prior to trial defendant moved to suppress all statements made by him to police officers on March 9 and later, including all statements from the time he was stopped on East Van Buren Street. He also moved to suppress all mention of narcotics. The Court granted the motion to suppress all statements, but limited it to those made after formal arrest. The motion to suppress evidence of narcotics was denied.

Defendant objected to admission in evidence of items which were not stolen but which were found in the trunk of his car. His objections were denied. After trial the defendant was found guilty. From the judgment on the verdict, he has appealed.

■ The first question we shall consider is whether it was error to admit in evidence statements made by the defendant to the police. In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court set forth certain statements of constitutional rights that must be given to those suspected of committing crimes. The statements or warnings were required to be given to offset possible intimidation by police attempting to obtain confessions from suspects who were undergoing "custodial interrogation". The four warnings are, 1) that he has a right to remain silent, 2) that any statement he does make may be used in evidence against him, 3) that he has a right to consult with an attorney and have him present prior to and during interrogation, and 4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires. The requirement applies not only to confessions, but also to admissions. All of the warnings must be given or the con-

fessions or admissions may not be used in evidence. State v. Intogna, 101 Ariz. 275, 419 P.2d 59 (1966); State v. Powell, 5 Ariz.App. 51, 423 P.2d 127 (1967). Since the warnings must be given prior to "custodial interrogation", we have been asked to locate that point where the prohibited questioning begins. The United States Supreme Court has called it that point where the questioning is initiated by law enforcement officers "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. State of Arizona, supra. This statement provides no formality in determining where the point lies, nor should there be any such formal point. The Supreme Court of the United States has left to the courts of each jurisdiction both the power and duty to determine from the facts when the suspect has come within that pervasive power of law enforcement officers which compels him to make statements rather than to allow him to do so or to be silent, as he voluntarily decides.

■ Because of the factual nature of this determination, we do not believe that the formal arrest is an adequate dividing line to use as a rule to determine when the warnings of constitutional rights must be given after a suspect has been stopped. The temptation would be too great for the officers to postpone formal arrest until a full questioning was completed. In State v. Intogna, supra, the fact that signalled the changed condition was a drawn gun in the hands of a police officer.

■ In the instant case, the warning given to the defendant at the time of arrest was insufficient to meet the minimum standards required by Miranda v. State of Arizona, supra. However, on motion of defendant the trial court suppressed all statements made after the formal arrest. Such statements not having been admitted in evidence, defendant was not prejudiced.

Over the objection of counsel, the Court allowed in evidence two statements made prior to arrest. In the first, the defendant was reported to have admitted that the automobile which he was driving was his. Secondly, when asked if he had been taking drugs, he said that he had been taking red devils. The defendant had not yet been advised of his constitutional rights. We must determine if the admission of these statements was error, in that defendant should have been completely warned prior to the statements.

■ Defendant was stopped for a traffic offense. As we have mentioned, the requirement of a warning is a rule devised to offset any attempt by authorities to get admissions or confessions by intimidation. However, traffic offenses are not ones in which we find such a risk of this kind of official behavior. In most cases, the offender is not detained longer than is needed to make out a citation and have it signed. A.R.S. § 28–1054. Often he may remain in his own car.

■ The language of the Miranda case applies its rule to crimes. A.R.S. § 13–103 makes it clear that crimes are either felonies or misdemeanors. Those accused of either a felony or a misdemeanor are entitled to the warnings of constitutional rights. Traffic offenses are misdemeanors. Rule 1, 17 A.R.S., Rules of Procedure in Traffic Cases. As we construe the statutes and rules of procedure for traffic offenses, it was the intention of the Legislature to create special handling of "routine" offenses.

■ The degree of seriousness, the number of offenses, the burden put upon police and courts, all militate against extending the Miranda-Escobedo protections to certain types of traffic offenses. State v. Zucconi, 93 N.J.Super. 380, 226 A.2d 16 (1967); People v. Bliss, 53 Misc.2d 472, 278 N.Y.S.2d 732 (1967). We would hold that defendant was not entitled to an immediate warning when he was stopped for crossing back and forth over a street center line.

We add, however, not all traffic offenses may be treated in this manner. For example, the law provides that upon the arrest of a person for a misdemeanor for

.violation of the statutes regulating traffic on the highways, he shall be immediately ·taken before the magistrate within the county in which the offense is alleged to have been committed. It further provides that when the person is taken before a justice of the peace, it must be before the nearest or most accessible justice of the peace with reference to the arrest when it is made in certain cases. See A.R.S. § 28–1053. This indicates situations where the handling of the offense is no longer routine.

It is to be noted that the crime with which defendant was ultimately charged and tried did not involve traffic laws and was not even known to the officers at the time to have been committed. Defendant was originally stopped because of his weaving back and forth across the double line. After certain investigation as to his condition, he was arrested for driving while under the influence of narcotics.

██ After the police noticed defendant's physical condition, it is obvious that he became a suspect, but the focus upon a particular individual as a suspect as developed in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which Miranda by footnote makes parallel to "custodial interrogation" is not the only concern. In the cases, supra, in which the rules on constitutional rights are developed, the crime was known, but the culprit was indistinct. Here, we have the opposite situation. The suspect is known, but the crime is indistinct. To put the matter in familiar terms, the police must have both reasonable grounds to believe that a crime has been committed, and also reasonable grounds to believe that the defendant is the one who committed it. A.R.S. § 13–1403, subsec. 4. We believe that the point where the warning must be given is when the two generally coincide, for from that point forward the police can be expected to pursue the case against the defendant with ·vigor. The police must have focused generally upon the crime so that they would have cause for arrest without a warrant.

When the offense is a misdemeanor the crime must be committed in the presence of the officer. A.R.S. § 13–1403, subsec. 1. The time for caution is when the arrest could be made. Everything prior to that time may reasonably be considered "the general on the scene questioning" which is permissible under Miranda. The officers smelled defendant's breath and looked at his arms. This was part of the process of investigation or determining if a crime had been committed. Questions asked at this time would also be investigative. Without such questions and answers, the police would be limited in knowing whether a person was drunk, a narcotics addict, diabetic, victim of an illness, or under the influence of medication or non-narcotic drugs. The rule of Escobedo applies in this way to determine if "custodial interrogation" has occurred.

██ As Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, at 417, 17 L.Ed.2d 374 (1966) says:

"* * * The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall short of the amount necessary to support a criminal conviction."

That philosophy applies here also. The events came in close succession and it is impossible to say that the officer realized that he had grounds for the arrest until after defendant had made these two statements. There are other tests also. The danger of custodial interrogation is intimidation, either mental or physical. Where we find the risk of that danger, we can draw the line, but it is not in the public street, beside one's own car, with two of one's own companions, at least without other factors which we do

not find. We hold the two statements were admissible.

The next question we believe of importance to consider is whether the defendant was subjected to an unreasonable search and seizure when officers searched his car and took possession of the property they found in the trunk.

■ The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The provisions of that amendment are applicable to the states through the due process clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ This constitutional provision has been interpreted to mean that search and seizure must come only after a lawful warrant has been issued on probable cause or without a warrant as an incident to a legal arrest. Cline v. United States, 9 Cir., 9 F.2d 621.

"The Constitution of the United States (Amendment IV) and the Arizona Constitution (Article II, Sec. 8, A.R.S.) do not prohibit all searches and seizures, but only those which are unreasonable. What constituted a reasonable search and seizure must be decided on the facts and circumstances of each particular case, rather than by a fixed standard or formula. * * *" State v. Baca, 1 Ariz. App. 16, 398 P.2d 924 (1965).

■ A traffic offense was committed in the presence of officers. After the defendant was stopped, the officers observed his condition, his stuperous speech, and slow reaction. They found that defendant had no liquor on his breath, but he did have punctures in his arms. The officers acted reasonably in concluding that the defendant had, in their presence, committed the offense of driving while under the influence of narcotics. The arrest was lawful.

■ A search without a warrant must be conducted contemporaneously with the arrest. 47 Am.Jur. Searches and Seizures § 19. The search occurred immediately after the arrest. It would be reasonable to expect to find narcotics in the car under such conditions, particularly since a syringe and needle were found on defendant's person after his arrest. Under A.R.S. § 36–1002.01, the mere possession of narcotics would be a felony.

■ In addition, the United States Supreme Court has indicated that a broader latitude may be allowed in the search of a car. Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). There has been no intimation, nor is there any evidence in the record, that the arrest was only a pretext for a search for stolen property. To the contrary, the officers had not yet received a report that the property was stolen. The search of defendant's automobile was reasonable.

■ The officers' questions to the defendant when the property in the trunk was discovered indicate that their suspicions were aroused. The defendant's answer that he could not name the person from whom he received them could only increase their suspicion. It is proper for law enforcement officials to seize items which are the fruits of another crime, even though the basis of search was for another reason, if that basis was not just a pretext for the search. 10 A.L.R.3rd 314. Reasonable suspicion is an adequate ground for seizure under the same conditions.

The United States Supreme Court has recently discussed searches and seizures in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The Court stated that the philosophical basis of the Fourth Amendment is to protect from invasions of privacy and not to protect property. Once the privacy

is reasonably invaded, the search and seizure may extend to what may aid in apprehending and convicting criminals. The government's interest to be pursued is in solving the crime. There must, of course, be a nexus between the item to be seized and the crime, but here the suspicion of the officers provided the connection.

■ We have gone into these questions because we believe it important to do so in light of the new developments in the law. However, we come now to the critical issue which is determinative of this appeal; that is, whether the evidence supports the verdict of guilty of receiving stolen property. A.R.S. § 13–621. The crime is composed of, 1) receiving stolen property, 2) with guilty knowledge, and 3) an intent of depriving the owner of possession or obtaining it for one's own gain. State of Arizona v. Hull, 60 Ariz. 124, 132 P.2d 436 (1942); Franklin v. Eyman, 3 Ariz.App. 501, 415 P.2d 899 (1966).

A reading of the transcript in the light most favorable to the state reveals that in the evidence presented to the jury, they had before them only that the articles of property which had been stolen were found in the trunk of the car defendant was driving at the time he was arrested. Some of the articles bore the name of Cole's Medical Supply and Rental. The evidence on this aspect of the case was presented by calling the driver of Cole's Medical Supply and Rental service truck. He testified as to missing the property from his truck and reporting it stolen. He also identified the property found in defendant's car as the same property. The owner of Cole's was called and his testimony corroborated that of the truck driver. He also identified the property and testified to its value. The officers testified to finding the property in defendant's car at the time of arrest. There was no evidence presented by the defendant after the prosecution rested.

The evidence that the defendant was asked where he had obtained the property which was found in the trunk of his car and that he had said he had gotten it from a friend whose name he refused to tell, was given in the judge's chambers, but never admitted before the jury. As a result, no evidence was presented to the jury as to any explanation the defendant may have made regarding the presence of the property in the trunk of his car.

■ It is as essential in this type of case to prove guilty knowledge on the part of defendant as it is to prove that the property was stolen. This knowledge may be established by circumstantial evidence. State v. Hull, supra. However, the mere possession of stolen goods does not in and of itself establish guilty knowledge. It is a circumstance to be considered with all the other evidence of the case bearing upon that issue. A finding of guilty knowledge and conviction on such evidence will be sustained when the possession is supplemented by other evidence. Included in the supporting evidence may be false, evasive or contradictory statements by the accused as to the possession of the property. State v. Hull, supra.

■ Inasmuch as defendant's explanation of his possession was not before the jury for their consideration, and the only other circumstance being the imprint of Cole's Medical Supply and Rental on some of the items, we would hold the evidence on criminal knowledge insufficient. The imprint of the name would at most only raise a supposition. Guilty knowledge cannot rest on supposition alone. State v. Hull. The defendant offered no evidence himself, and although the goods were sufficiently proven to be stolen and in the car the defendant was driving, we find there was no proof given to the jury that the defendant knew he had possession of stolen goods or, in fact, that he knew he had the goods at all. We therefore reverse the judgment and verdict for failure to grant defendant's motion for a directed verdict at the end of the State's evidence, and order the case dismissed.

CAMERON, C. J., concurs.

STEVENS, Judge (dissenting).

I regret my inability to agree with my associates in the matter of their conclusion that the evidence was not sufficient to support proof of the essential elements of the offense. The following language is found in Hull which is cited by the majority:

"While it is true that guilty knowledge cannot rest on mere supposition and the evidence must show it beyond a reasonable doubt, nevertheless this fact may be established by circumstantial as well as by direct evidence. (citing cases)

"The mere possession of stolen goods by a defendant does not in and of itself establish guilty knowledge, but it is a circumstance to be considered with all the other evidence of the case as bearing upon that issue, *and a finding of guilty knowledge and a conviction will be sustained when the evidence of possession is supplemented by other evidence.*"

(Emphasis supplied)

The Supreme Court states that the supporting evidence *may be* false, evasive or contradictory statements by the defendant or his unusual manner of acquisition, either of which was presented to the jury in the case we now have under consideration. In my opinion the Supreme Court does not hold that these are the only ways of proving the necessary elements of guilt by circumstantial evidence. The jury had evidence that on 8 March at 11:30 a. m. the items found in the defendant's car trunk were resting on the bed of a pickup truck at the business place of the owner of the items. These were discovered to be missing shortly after 5:30 the same day, the truck not having been moved in the meantime. The items were found in the trunk of the defendant's car at 2:30 on the following morning at a point not far, geographically, from the place of business of the owner of the items. The items were of an unusual nature. In my opinion the theft a comparatively short period prior to the discovery of the items, the location of the items in the trunk of the defendant's car, the reasonably close geographic location between the place of the theft and place of the discovery are all circumstances from which the jury could logically find that the defendant's guilt was established beyond a reasonable doubt. I would affirm.