**STATE of Missouri, Respondent,**

v.

**Gary Duane KEMPER, Appellant.**

**No. WD 32206.**

Missouri Court of Appeals,
Western District.

Jan. 12, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 16, 1982.

Application to Transfer Denied March 16, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

TURNAGE, Presiding Judge.

Gary Kemper was found guilty by a jury of robbery in the first degree, § 569.020, RSMo 1978. The jury assessed punishment at imprisonment for eighteen years, but the court set imprisonment at fifteen years with the sentence to be served consecutive to two other sentences imposed upon Kemper of ten and fifteen years.

On this appeal Kemper contends only that the court should have suppressed his statement. Affirmed.

Kemper does not challenge the sufficiency of the evidence and it will suffice to note that there was ample evidence from which the jury found that Kemper robbed the Goodrich Dairy on June 10, 1979, while armed with a deadly weapon.

On June 15, 1979, Kemper was driving his automobile when he was stopped by an officer of the Independence Police Department because his automobile matched the description of one used in a series of armed robberies. On approaching the car the officer saw a pair of scissors on the console in front of the gearshift, and knew that some of the robberies had been committed with a

pair of scissors. Shortly after Kemper was stopped, two more police cars arrived. Kemper consented at the scene to a search of his car and was then requested to accompany the officers to the police station. The officers stated that Kemper was not under arrest at this time, but Kemper said he did not feel free to leave.

At the police station Kemper was again requested to give consent for a search of his car, and he did. The search revealed evidence which further linked Kemper with the series of robberies. A telephone call was then made to a witness with the request that this person come to the station to see if he could identify Kemper. When the witness observed Kemper, he identified him as the person who had robbed a U-Totem Store.

After Kemper had been at the police station for about two and one-half hours, he was advised that he was under arrest. Testimony from the police officers indicated that prior to this time Kemper had been advised that he was free to leave. After Kemper was told that he was under arrest he was given a document which bears the heading: "Warning and Waiver of Rights." The first form advised Kemper of his rights in familiar *Miranda* language. Kemper signed following the statement that he had read this statement of rights and that he understood what his rights were. Kemper then signed the form which said that he voluntarily and intentionally waived his rights and was willing to make a statement and answer questions. The form stated that he did not want a lawyer, and that no threats or promises had been made to him. Finally, there was a certification which Kemper signed in which he stated that he certified that the warning and waiver of rights had been read by him and that he had signed the warning and waiver. Thereupon Kemper gave a lengthy statement in which he admitted a number of robberies at convenience-type stores.

In this case Kemper was charged with only one robbery. The statement was not given to the jury nor was it read to them. The only reference to the statement was testimony by one of the police officers who took the statement in which he testified that Kemper had made a statement admitting the Goodrich robbery for which he was being tried. Kemper contends that the statement should have been suppressed on his pretrial motion because the officers failed to give him the *Miranda* warning at the time he was arrested. Kemper contends he was subjected to searching and probing prior to his arrest and that the *Miranda* warnings were required at the time he was first stopped because he concedes the officer had probable cause to make an arrest at the time he was stopped.

Kemper does not dispute that the searches made before he was formally advised that he was under arrest were made with his consent. The officers testified that this consent was given after he was advised that he did not have to consent. No contention concerning this consent is now raised.

Kemper argues that because the officer had probable cause to arrest him at the time he was stopped that the officer was required to give a *Miranda* warning at that time. It should first be pointed out that Kemper had no constitutional right to be arrested. *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966).

With reference to the giving of the *Miranda* warning, *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) addressed the problem of custodial interrogation. In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 1689[8–14], 64 L.Ed.2d 297 (1980) the court stated:

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."

It is clear from these cases that the *Miranda* warning is required prior to any custodial interrogation or its functional equivalent. No further notice need be taken of the functional equivalent in *Innis* because no contention is made that such occurred in this case. Here Kemper was concededly given all of his *Miranda* warnings, and did, in fact, execute a voluntary

waiver of those rights before any interrogation began. Kemper's only contention is that the *Miranda* warning was required to be given at the time he was first stopped. As held in *State v. Darris,* 587 S.W.2d 89, 91[5] (Mo.App.1979) the rule in *Miranda* does not obtain until there is both custody and questioning. Here that rule was not violated and the *Miranda* warnings were not required to be given when Kemper was stopped, but only prior to any interrogation. He concedes he was given this warning prior to any interrogation.

Kemper relies entirely on a quotation in *State v. Pierce,* 556 S.W.2d 216, 217–18[1, 2] (Mo.App.1977) from *State v. Tellez,* 6 Ariz. App. 251, 431 P.2d 691, 696[11] (1967). The quotation from *Tellez* found in *Pierce* must be read in light of the facts and the statement by the court in *Tellez* at 431 P.2d 695 that the question was to locate the point at which the prohibited questioning begins. The court in both *Pierce* and *Tellez* was called on to decide whether the interrogation was custodial or only general on-the-scene questioning which it held was beyond the scope of *Miranda.* No question was presented in those cases of whether a *Miranda* warning is required when a person is first taken into custody. Thus, those cases are inapplicable here.

In this case Kemper agrees he was given the *Miranda* warning after he was taken into custody but before any interrogation began. Under *Miranda* and *Innis* no warning was required prior to interrogation even though Kemper was in custody. The judgment is affirmed.

All concur.