We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and find none.

The convictions and sentences for arson and felony murder are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.

675 P.2d 1310

**Jon Mark HAGEN, Plaintiff-Appellee,**

v.

**UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, Garnishee Defendant-Appellant.**

**No. 17193–PR.**

Supreme Court of Arizona,
En Banc.

Jan. 3, 1984.

Hofmann, Salcito, Stevens & Myers by Leroy W. Hofmann, Phoenix, for plaintiff-appellee.

Winston & Strawn by W. Charles Thomson, III, Phoenix, for garnishee defendant-appellant.

FELDMAN, Justice.

This is a contested garnishment proceeding brought against an insurer by the insured's assignee. The trial court entered summary judgment in favor of the assignee, Hagen. The court of appeals reversed and remanded with instructions. *Hagen v. United States Fidelity and Guaranty In-*

*surance Company,* 138 Ariz. 521, 675 P.2d 1340 (App.1983). Both parties have petitioned us for review. *See* Rule 23(a), Arizona Rules of Civ.App.Proc., 17A A.R.S.

After review of the record, we conclude that the opinion of the court of appeals is correct and that all issues were properly decided. Ordinarily, we would simply deny review. However, while denial of review usually attests our approval of the result reached by the court of appeals, it does not necessarily indicate our approval of the legal analysis contained in the opinion. See generally *Washington v. Confederated Bands and Tribes,* 439 U.S. 463, 477, 99 S.Ct. 740, 749, 58 L.Ed.2d 740 n. 20 (1979). Because we do agree with the court's legal analysis in the case at bench, and because the opinion deals with several issues not previously settled in this State, we hereby adopt the opinion of the court of appeals and indicate our agreement with the legal principles set forth in that opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

675 P.2d 1310

**STATE of Arizona, Appellee,**

v.

**Robert Lee WALKER, Appellant.**

**No. 5497.**

Supreme Court of Arizona,
En Banc.

Jan. 3, 1984.

Reconsideration Denied Feb. 7, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Norman R. Freeman, Tucson, for appellant.

HOLOHAN, Chief Justice.

Appellant, Robert Lee Walker, was found guilty by a jury of first degree murder, A.R.S. § 13–1105, and arson of an occupied structure, A.R.S. § 13–1704. He was sentenced to death for the murder and to 21 years imprisonment for the arson conviction, to be served consecutively to the murder sentence. We have jurisdiction to review the conviction and sentences pursuant to Arizona Const. Art. 6, § 5 and A.R.S. § 13–4031.

The facts developed at trial show that at approximately 1:20 a.m. on September 6, 1981 police responded to a call that there was a fire at the AA Apartments in Safford, Arizona. Arriving at the apartments, an officer found Unit 16 in flames. With the help of a second officer, they managed to break open the door to the apartment and discovered the body of the victim, 81 year old Roy Lewis. The fire department arrived and put out the blaze. Because of the strong odor of gasoline and the manner in which the fire burned, arson was suspected. Further investigation by an arson detection expert revealed that the fire had been caused by gasoline that had been thrown or poured in and around the apartment and ignited. The fire had been started outside the apartment and spread into it. The melted remains of a Prestone container were found on the front porch. An autopsy showed that the victim died of smoke inhalation.

The events which transpired in the hours leading up to the fire at Apartment 16 were developed through statements by the appellant and the testimony of several witnesses. It appears that the appellant went to a friend's house at about sunset on September 5 and drank a considerable amount of beer. Earlier that day appellant had been drinking whiskey. He testified that he had drunk one half pint of whiskey and he had been drinking from a second half pint bottle during the evening.

From his friend's house, the two of them went to the pool hall where they drank more beer. Appellant left the pool hall and testified that at some point he met two boys who were having car trouble. They gave him about a dollar to buy them some gas. Appellant went to a Mobil gas station and obtained about a gallon of gas in a Prestone container supplied by the station but he did not return to the boys who were waiting. Instead, he accepted a ride with two employees at the station.

At about 8:45 p.m. the three men left the station and for approximately the next three hours drove around Safford and Thatcher drinking beer. At some time between 11:30 p.m. and 12:00 a.m. appellant asked to be dropped off but informed his companions that he would return shortly. He then headed in the direction of the AA Apartments. According to appellant he never went to Roy Lewis' apartment the night of the fire. However, an Indian woman, Imogene Wilson, testified, that at some time after 9:00 p.m. that evening appellant came to Lewis' apartment, where she and her friend, Louise Kozie, were staying and drank some wine with them and then left. Appellant returned to the boys' car approximately 15–20 minutes later and they drove around Safford. About 12:30 a.m. to 1:00 a.m. they parked the car behind the Mobil station. One of the boys got into a fight at which time appellant left the area with a can of beer and the Prestone container filled with gasoline.

Appellant was stopped at about 12:40 a.m. by an Officer Hughes, who observed appellant carrying the Prestone container. He questioned the appellant briefly but when the appellant told him about the fight at the Mobil station the officer left to investigate.

At this point, the testimony of the various witnesses is conflicting. Ms. Wilson

testified that appellant returned to the apartment and that the victim told him "not to come back" and locked the door. Before he did, however, appellant threw gasoline on Lewis and around the apartment. Ms. Wilson testified that approximately five minutes after appellant left, the apartment was on fire. She and Ms. Kozie were able to escape through a window and after attempting to get help, left to spend the night at Ms. Wilson's aunt's house. Ms. Kozie, on the other hand, testified that Walker never came to the apartment and she never heard the confrontation prior to the fire.

Appellant testified that after seeing Officer Hughes he went back to the pool hall and sold the gas to someone for $3.00. From the pool hall he went to the park and slept for a while. At 3:40 a.m. he checked himself into jail as a "sleeper."

At about 6:40 the next morning appellant left the jail. An officer testified that he saw Walker walk through the AA Apartments, stop and look toward apartment 16 and then leave. Appellant denies that he went to the apartments. At approximately 10:00 to 10:30 a.m. Walker was arrested for the murder and arson.

Before trial a Rule 11 hearing was held to determine whether appellant was competent to stand trial. Walker was examined by two psychiatrists. Both concluded that appellant is mildly mentally retarded with an I.Q. of about 70. Appellant's subnormal intelligence is confirmed by school records that list his I.Q. as 55. Although he went through special education and finished the eleventh grade, his reading level is at about the second grade, his vocabulary is limited and he is unable to figure sums accurately.

The psychiatrists differed in their opinion as to appellant's competency to stand trial. Whereas Dr. LaWall believed appellant competent, Dr. Gurland had "definite doubts as to the competency of Mr. Walker to stand trial" based on appellant's limited intellectual ability which Dr. Gurland believed would affect appellant's ability to assist in his own defense. The trial judge, however, ruled that appellant was compe-

tent to stand trial, provided defense counsel took extra time with the case and made special efforts to explain the proceedings to his client.

■ Although the issue was not raised by the appellant or objected to at trial, we note that the jury instruction on arson was based on a definition of arson not in force at the time. The effective statute on arson recites in part:

§ 13–1704. *Arson of an occupied structure*

A. A person commits arson of an occupied structure by intentionally and unlawfully damaging an occupied structure by knowingly causing a fire or explosion.

The instruction given read as follows:

The crime of arson of an occupied structure requires proof of the following two things:

1. The defendant *intentionally*, unlawfully, and knowingly caused a fire; and

2. The fire damaged an occupied structure. (Emphasis supplied).

The instruction was an incorrect statement of the law. In *State v. Vickers*, 138 Ariz. 450, 675 P.2d 710 (1983;) we held that the current arson statute requires a specific intent to damage the structure. Such an intent was not required in the former arson statute. *State v. Scott*, 118 Ariz. 383, 576 P.2d 1383 (App.1978).

The instruction given in this case required the jury to determine whether the accused intentionally caused a fire. This is incorrect under the current statute. The requisite intent is to damage the structure. *State v. Vickers, supra.*

■■ The arson conviction must be reversed because the incorrect instruction constitutes fundamental error. Since the basis of the murder conviction was felony-murder—death caused by arson—the murder conviction must also be reversed.

The case must be retried under proper instructions. Because of this disposition it is not necessary to discuss most of the

issues raised by appellate counsel. There are, however, several matters which may reoccur which should be addressed.

■ Pieces of the victim's skin were received in evidence to show that the victim had been burned. We doubt that such evidence had probative value sufficient to outweigh its obvious prejudice. Rule 403, Rules of Evidence. There was no doubt that the victim had suffered burns over parts of his body. The medical evidence covered this matter in detail. There was no necessity to offer pieces of the victim's skin to further prove the point already established by the unchallenged medical testimony.

■ In cross-examination of the appellant the prosecutor made reference to statements made by the appellant at the September 10 interview with a police officer while appellant was in custody. There had been no finding that the September 10 statement was voluntary. In the state's case there had been an objection by the defense to any testimony about the September 10 statement. The prosecution did not pursue the matter until cross-examination of the appellant. Statements obtained in violation of the *Miranda* Rule may nevertheless be used for impeachment of the testimony given by the defendant in the case provided the statements were obtained without violation of the traditional standards for evaluating voluntariness and trustworthiness. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The jury must be instructed by the trial court that the statement of the defendant may be considered only as it bears on the credibility of the defendant and not as proof of guilt.

Since we reverse the convictions, there is no necessity to discuss the penalty imposed.

The judgments of conviction of arson and murder are reversed and the case is remanded to the superior court for a new trial.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.