840 P.2d 300

**The STATE of Arizona, Appellant/Cross–Appellee,**

v.

**Donald Wayne HATFIELD, Appellee/Cross–Appellant.**

**No. 2 CA–CR 91–0343.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 8, 1992.

Review Denied Dec. 1, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie and Kent E. Cattani, Phoenix, for appellant/cross-appellee.

Constance L. Trecartin, Tucson, for appellee/cross-appellant.

### OPINION

FERNANDEZ, Judge.

Appellee/cross-appellant Donald Hatfield was convicted of three counts of sexual

conduct with a person under the age of 15. Based on the holding in *State v. Bartlett,* 164 Ariz. 229, 792 P.2d 692 (1990) (*Bartlett I*), the trial court determined that application of the mandatory sentencing provisions of A.R.S. § 13–604.01 would constitute cruel and unusual punishment for the crimes involved. As a result, it sentenced appellee as an ordinary class two felon to presumptive, concurrent prison terms of seven years, 10.5 years, and 15.75 years.

The state has appealed, contending that the trial court erred in following *Bartlett I.* In *Arizona v. Bartlett,* —— U.S. ——, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991), the United States Supreme Court vacated *Bartlett I* and remanded the case for further consideration in light of its decision in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Our supreme court reconsidered the matter in *State v. Bartlett,* 171 Ariz. 302, 830 P.2d 823 (1992) (*Bartlett II*). Because *Bartlett I* is no longer the law in Arizona, we agree with the state and remand for appellee to be resentenced in accordance with the holding in *Bartlett II.*

Appellee has cross-appealed, contending that the court erred in denying his motion to suppress the statements he made to Detective Brown and Officer Dreyer. Detective Brown testified that she interviewed appellee at the offices of Child Protective Services after she had advised him of his rights and he agreed to answer her questions. The interview lasted 35 minutes and was tape-recorded. Appellee was not under arrest at the beginning of the interview; he was arrested at its conclusion after he admitted having had intercourse with the victim. Appellee argues that his statements were involuntary because Detective Brown obtained his admissions by the use of ruses.

Appellee began dating the victim's mother in 1986 and began living with her and her daughters shortly thereafter. In March 1990, the oldest daughter, who was then 13⅔, accused appellee of inappropriate sexual contact with her. When Detective Brown informed appellee of the daughter's allegations, he repeatedly denied that he had behaved improperly. Brown then told him that the victim thought that she was pregnant and that appellee was the father. Appellee responded that he could not imagine how he could be the father. The detective told him the fetus would be aborted and tests would be conducted to determine the father. Appellee continued to deny any sexual impropriety.

The following exchange then took place:

Q. I'm not accusing you of molesting her. I already told you that the explanation could be as simple as a thirteen year old sexually experimenting and you were handy and things got out of control. I man [sic], can you blame a guy for that. That puts a whole different light on it from molesting, a whole different light on it. And then if the baby's yours there's the explanation.

A. I just can't believe this.

Q. You know, and that's why I'm saying it, if it happened and if it happened and she came on to you and a situation got out of control, things happen. And I'd understand that, but I need you to tell me your side of the story, because there's that other side. Did things get out of control with you and [the victim]?

Appellee then admitted having had intercourse with the victim.

At the conclusion of the interview, appellee was arrested, and Officer Dreyer was called to transport him to jail. During the ride, appellee asked Dreyer what was going to happen to him. The officer asked appellee, "Did you do it?" and appellee responded affirmatively. The officer then told him that there would probably be a trial and, depending upon the outcome, appellee possibly would go to prison.

Appellee moved to suppress his statements to the two officers, contending that Detective Brown had improperly coerced him and that he would not have confessed to Officer Dreyer if he had not already confessed to Brown. After an evidentiary hearing, the court denied the motion, finding that appellee's will was not overborne by either of the officers.

Appellee argues that the court erred in denying the motion because Detective

Brown's use of ruses to obtain his admissions was improper. Detective Brown testified that when she told appellee the victim was pregnant, she knew that was not true. Appellee also insists that because he is very much against abortion, the officer's threat to have the alleged fetus aborted and tested caused him to confess in order to prevent that from happening. We find no merit to that argument. The evidence was that Brown had no knowledge of appellee's views on abortion. Moreover, appellee did not confess when the officer told him the victim was pregnant and the fetus would be aborted. The use of that ruse, therefore, cannot be error.

Appellee also complains that the detective used a second ruse in suggesting that the victim had instigated the sexual activity and that it had been a situation that had gotten out of control. Appellee did confess after Detective Brown made that suggestion. The officer testified that a ruse is an investigative tool and neither a promise nor a threat. Appellee contends that the ruse was actually a lie, a promise, or a threat.

■ In determining whether a confession is voluntary, the court must consider the totality of the circumstances and the effect they had upon the defendant's will. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "Confessions are presumed to be involuntary, and the state has the burden of proof by a preponderance of the evidence to show that a confession was voluntary and not the product of physical or psychological coercion." *State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). The ultimate test is whether the defendant's will was overborne by the police. *Schneckloth, supra.* In making that determination, the court can consider factors such as the accused's age, his or her level of intelligence and education, whether or not the accused was advised of his or her constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep. *Id.*

When a trial court determines that a confession is voluntary, we will not disturb that determination absent clear and manifest error. *State v. Amaya–Ruiz, supra.*

■ In this case, appellee was nearly 28 years old, has two years of college education, and was properly advised of his constitutional rights. The interrogation lasted 35 minutes and was conducted in the presence of a Child Protective Services case worker. There is no allegation that the police used any form of physical punishment.

Under certain circumstances, police officers may use psychological tactics to elicit statements from a suspect. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). In Arizona, confessions have been found to be voluntary notwithstanding the use of psychological tactics and interviewing techniques that play upon a defendant's sympathies. In *State v. Winters,* 27 Ariz.App. 508, 556 P.2d 809 (1976), the defendant was told that his fingerprints matched those found at the scene of a robbery when in fact the officer knew they did not. The court ruled that "[a] statement induced by fraud or trickery is not made involuntary unless there is additional evidence indicating that the defendant's will was overborne or that the confession was false or unreliable." *Id.* at 511, 556 P.2d at 812. In *State v. Amaya–Ruiz, supra,* a police detective told the defendant that two witnesses had seen him running from a stolen truck, a fact that was not true. The supreme court found the confession voluntary because the defendant continued to deny that he had stolen the truck although he admitted that he had committed murder.

In *State v. Ferguson,* 149 Ariz. 200, 717 P.2d 879 (1986), the court upheld a determination that a confession was voluntary despite the fact that the police officer had appealed to the defendant's conscience and suggested that he might be able to provide information that would explain his actions. The supreme court observed that in making its determination, the trial court had had an opportunity to assess the credibility and

demeanor of the witnesses and to listen to a tape recording of the confession.

In this case, the trial court conducted a lengthy evidentiary hearing; reviewed a transcript of appellee's tape-recorded statement; was able to assess the credibility and demeanor of the witnesses, including appellee; and determined that appellee's will was not overborne by either of the police officers. Although we do not condone Detective Brown's conduct, we do not find clear and manifest error because the totality of the circumstances supports the trial court's ruling.

Appellee's convictions are affirmed, and the case is remanded for resentencing pursuant to *Bartlett II.*

DRUKE, P.J., and HATHAWAY, J., concur.