979 P.2d 5

**STATE of Arizona, Appellant,**

v.

**Dennis W. PETTIT, Appellee.**

**No. 1 CA–CR 98–0093.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 20, 1998.

Review Denied May 25, 1999.

Melvin R. Bowers, Navajo County Attorney by Kate L. Taber, Deputy County Attorney, Holbrook, Attorneys for Appellant.

Myrna J. Parker, Navajo County Public Defender by Cindy L. Wagner, Deputy Public Defender, Holbrook, Attorneys for Appellee.

## OPINION

FIDEL, Judge.

¶ 1 The State of Arizona appeals from the trial court's suppression after a voluntariness hearing of statements the defendant made at the scene of his arrest and during his later custodial interrogation, none of which were preceded by *Miranda* warnings.

¶ 2 We reverse the trial court's suppression of defendant's prearrest statements, finding that defendant was not in custody and that *Miranda* warnings were not required. We affirm the trial court's suppression of the statements defendant made during custodial interrogation, which the trial court found involuntary and ineligible for use for any purpose.

¶ 3 In reviewing the suppression of the latter statements, we consider the following questions, among others: (1) Were defendant's responses to custodial investigation rendered involuntary by the investigating officers' representation that the interrogation was intended to further an investigation against Warren Pettit and that they would not question defendant about his own case? (2) Did the evidence, in the absence of any testimony by defendant, permit the trial court to conclude that defendant relied upon that representation? We answer both questions in the affirmative.

### FACTS AND PROCEDURAL HISTORY

¶ 4 · After an anonymous informant gave the Show Low Police Department a description, location, and license plate number for a

vehicle supposedly "loaded with narcotics," the Navajo County Major Crime Apprehension Team ("the task force") initiated surveillance. Eventually believing that the suspect vehicle was departing for New Mexico, members of the task force and the Show Low Police Department stopped the vehicle as it was leaving town.

¶ 5  Two men occupied the car: the driver, later identified as defendant Dennis W. Pettit, and one passenger, who identified himself as Charles Brenner but fit the physical description of Warren Pettit, a known violent drug offender. The officers asked both occupants to step out, and Officer James Johnson approached defendant and requested identification. He informed defendant that police had received an anonymous phone call indicating that the vehicle was carrying drugs and asked if the car belonged to defendant. Defendant indicated that the car belonged to his cousin and may have been reported stolen. Officer Johnson asked defendant if he had any knowledge of drugs in the vehicle, and defendant said that he did not. Officer Johnson then informed both men that the police intended to search the vehicle and, if no drugs were found, they would be free to go.

¶ 6  Believing that defendant's passenger might be Warren Pettit and believing that Warren Pettit was a violent felon, the officers handcuffed both men and placed them in the back of a patrol car before conducting the search. The officers' search yielded more than one pound of methamphetamine and other contraband. Officers transported defendant and his passenger to the Show Low Police Department, where the two men were booked and placed in a holding cell.

¶ 7  At the police station, officers Ron Lewis and Mike Bell asked defendant if he would cooperate with them to further their investigation. In his testimony at the voluntariness hearing, Officer Lewis characterized this conversation as "along the lines of a free talk." Officer Bell testified that he told the defendant that what they wanted to discuss with him "didn't concern this particular case and his traffic stop."

¶ 8  Specifically, the officers were interested in learning about the source and destination of the drugs and were hopeful that defendant would implicate Warren Pettit, whom the officers believed to run a drug smuggling operation in New Mexico. Officer Bell informed defendant that his questions concerning the contraband in defendant's car would be in furtherance of his investigation of Warren Pettit:

I told him that I was not going to ask questions on that particular case, that I was going to ask questions in the furtherance of the investigation, and attempting to further any investigation, questions would come up concerning the methamphetamine just so we would have some knowledge on how to further the investigation, whether that would be again to go back to California to the source of the methamphetamine or to be delivered in New Mexico. So during the course of the conversation in furthering the investigation, some statements were made about the methamphetamine that they had in their possession . . . .

¶ 9  Officer Bell knew, he acknowledged on cross-examination, that by cooperating with the officers' efforts to further their broader investigation, defendant would make self-incriminating statements. Yet at no time did any officer advise defendant of his rights as required under *Miranda*.[1]

¶ 10  Based on the failure to administer *Miranda* warnings, defendant challenged the admissibility of all statements he made to police on the day of his arrest and requested a voluntariness hearing. Officers Johnson, Scrivner, Lewis, and Bell testified at the hearing; defendant did not.

¶ 11  The trial court found that all of defendant's statements to police were obtained in violation of *Miranda* and were therefore inadmissible in the State's case-in-chief. The trial court further determined that defendant's statements during the interview with officers Lewis and Bell were involuntary and barred their use for any purpose at trial. We review the trial court's rulings for clear

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

and manifest error. *State v. Lopez*, 174 Ariz. 131, 137, 847 P.2d 1078, 1084 (1992).

## PREARREST STATEMENTS

■ ¶ 12 The trial court suppressed defendant's statements at the scene of his arrest on the grounds that they were obtained in violation of *Miranda*. The officers were constitutionally obliged to provide *Miranda* warnings before questioning the defendant, the trial court concluded, because they had stopped his car with the purpose and intent to search it for drugs and because they had probable cause to do so.[2] We disagree.

■ ¶ 13 Police officers must administer *Miranda* warnings prior to conducting "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Factors indicative of custody include: (1) whether the objective indicia of arrest are present, (2) the site of the interrogation, (3) the length and form of the investigation, and (4) whether the investigation had focused on the accused." *State v. Stanley*, 167 Ariz. 519, 523, 809 P.2d 944, 948, *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991).

¶ 14 The questioning now at issue took place in the parking lot of a service station located just off the main highway. Defendant's car was stopped in a routine manner by a marked police cruiser with flashing lights. Defendant and his passenger were asked to step out of the car. When Officer Johnson approached defendant, the police had not searched or restrained either man.

■ ¶ 15 A motorist subjected to a traffic stop is ordinarily not "in custody" for *Miranda* purposes. *Berkemer v. McCarty*, 468 U.S. 420, 436–41, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Police officers have authority to detain and question persons, whether motorists or pedestrians, without providing *Miranda* warnings when they have a reasonably articulable suspicion of criminal activity. *Id.* at 439, 86 S.Ct. 1602. Courts have had great difficulty in fixing the point, short of formal arrest, at which roadside investigative questioning becomes "custodial interrogation" requiring *Miranda* warnings. *Id.* at 440, 86 S.Ct. 1602. In Arizona, that point is said to occur when police have both reasonable grounds to believe that a crime has been committed and reasonable grounds to believe that the person they are questioning is the one who committed it. *State v. Tellez*, 6 Ariz.App. 251, 256, 431 P.2d 691, 696 (1967).

■ ¶ 16 At the time of this traffic stop, although the officers may have had reasonable grounds to believe that defendant was driving a car containing contraband, they did not know the identity of the driver and passenger or whether either owned the car. In his initial exchange with defendant, Officer Lewis undertook to learn this information. The police did not have probable cause to arrest either of the men until the search of the vehicle revealed contraband. *See State v. Hein*, 138 Ariz. 360, 364, 674 P.2d 1358, 1362 (1983) (probable cause to make warrantless arrest requires a reasonable belief that a crime has been committed by the person being arrested). Thus, the concurrence of beliefs that the *Tellez* court identified did not occur until sometime after Officer Lewis spoke with defendant. Up to that point, the questions asked are properly characterized as investigative in nature. *Tellez*, 6 Ariz. App. at 256, 431 P.2d at 696. Neutral, non-accusatory questioning in furtherance of a proper preliminary investigation is permissible under *Miranda*. *State v. Landrum*, 112 Ariz. 555, 559, 544 P.2d 664, 667–68 (1976); *State v. Starr*, 119 Ariz. 472, 474–75, 581 P.2d 706, 708–09 (App.1978). We therefore conclude that the trial court erred in suppressing the statements defendant made during the roadside stop.

---

2. The validity of the initial stop and warrantless search are not at issue in this appeal. At a suppression hearing held concurrently with the voluntariness hearing, the trial court expressly found that the stop and search were justified, and this appeal does not concern that ruling. Defendant asserts that this finding necessitates the conclusion that defendant was under de facto arrest and therefore in custody for *Miranda* purposes from the moment police pulled him over. As we explain *infra*, neither the police officers' subjective intent in stopping the defendant's car nor the existence of probable cause is determinative of the question whether defendant was in custody once he was stopped.

### STATIONHOUSE INTERROGATION

¶ 17    Because the police failed to comply with *Miranda* before questioning defendant, the trial court suppressed statements defendant made while in custody at the stationhouse. And because the trial court further determined that defendant's statements during the stationhouse interview with officers Lewis and Bell were involuntary, the court barred the State from using these statements for any purpose at the trial. *See State v. Walker,* 138 Ariz. 491, 495, 675 P.2d 1310, 1314 (1984) (statements obtained in violation of *Miranda* may nevertheless be used to impeach defendant at trial provided they were voluntarily made).

¶ 18    The State argues that the record does not substantiate the trial court's finding that defendant's stationhouse statements were involuntary. In Arizona, confessions are presumptively involuntary, and the State has the burden of proving otherwise by a preponderance of the evidence. *State v. Amaya–Ruiz,* 166 Ariz. 152, 164, 800 P.2d 1260, 1272 (1990). The trial court must examine the totality of the circumstances to determine whether, as a result of coercive police conduct, defendant's will was overborne. *Id.* at 165–66, 800 P.2d at 1272–73.

¶ 19    At the outset, we note that the officers' failure to administer *Miranda* warnings weighs against a finding of voluntariness. As both parties point out, "[v]oluntariness and *Miranda* are two separate inquiries." *State v. Montes,* 136 Ariz. 491, 494, 667 P.2d 191, 194 (1983). This does not, however, make a *Miranda* violation irrelevant to the issue of voluntariness. To the contrary, in considering whether a person's will was overborne sufficiently to render a confession involuntary, the court should consider whether the accused was advised of his or her constitutional rights. *State v. Hatfield,* 173 Ariz. 124, 126, 840 P.2d 300, 302 (App.1992); *see also* A.R.S. § 13–3988(B)(3) & (4) (1989). Although a failure to give *Miranda* warnings is not determinative of voluntariness, the lack of warnings gives "added weight" to other circumstances that make a confession involuntary. *Davis v. North Carolina,* 384 U.S. 737, 740–41, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Accord-

ingly, we examine the voluntariness of defendant's statements · against the backdrop of the *Miranda* violation.

¶ 20    The trial court concluded that defendant's stationhouse statements were coerced because the officers led defendant to believe that any incriminating statements he made in response to their questions would not be used against him. "Promises of benefits or leniency, whether direct or implied, even if only slight in value, are impermissibly coercive." *State v. Lopez,* 174 Ariz. 131, 138, 847 P.2d 1078, 1085 (1992). Before a court determines that a statement is involuntary as the result of a promise, there must be evidence that (1) a promise of a benefit or leniency was made, and (2) defendant relied on the promise in making the statement. *Id.*

¶ 21    At the voluntariness hearing, Officer Lewis testified that the conversation with defendant was in the nature of a "free talk." Officer Bell told the defendant that he would not be asked questions about his specific case and that any questions concerning the methamphetamine found in defendant's car would be "just so we would have some knowledge on how to further the investigation" of Warren Pettit in New Mexico and the source of the drugs in California. In setting out ground rules for an interrogation "not on [defendant's] particular case" but "just" to further an investigation against Warren Pettit, officers Lewis and Bell clearly and pointedly conveyed that any statements made in the course of the interview would not be used against him. Promises of this nature are impermissibly coercive. *See State v. Burr,* 126 Ariz. 338, 340, 615 P.2d 635, 637 (1980); *State v. Doody,* 187 Ariz. 363, 370, 930 P.2d 440, 447 (App.1996), *rev. denied* (Jan. 14, 1997).

¶ 22    The State argues that, even assuming the officers made such a promise, defendant did not testify at the voluntariness hearing and therefore failed to carry his burden of establishing reliance. The case law indeed requires evidence that defendant relied on the promise. *Lopez,* 174 Ariz. at 138, 847 P.2d at 1085. The State has offered no authority, however, to support the proposi-

tion that a defendant may provide such evidence only by his own testimony.

¶ 23 It is now well established "in civil and criminal cases, that direct and circumstantial evidence have equal probative worth." *Lohse v. Faultner*, 176 Ariz. 253, 259, 860 P.2d 1306, 1312 (App.1992). Although defendant did not testify to his reliance at the voluntariness hearing, there is ample circumstantial evidence from which reliance may be inferred. Defendant agreed to cooperate immediately after officers Lewis and Bell explained the ground rules for the interview. *Compare State v. Lacy*, 187 Ariz. 340, 348, 929 P.2d 1288, 1296 (1996) (fact that several months had passed between alleged promise and defendant's statement contradicted reliance); *State v. Walton*, 159 Ariz. 571, 579–80, 769 P.2d 1017, 1025–26 (1989), *aff'd* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (no reliance where forty-five minutes elapsed between alleged promise and confession). The officers, and not defendant, initiated the interview. *See Lacy*, 187 Ariz. at 348, 929 P.2d at 1296. And prior to receiving the officers' assurances, defendant had not made self-incriminating statements to police. *Cf. Lopez*, 174 Ariz. at 138, 847 P.2d at 1085 (defendant could not have relied on promise where evidence showed that incriminating statements were given prior to alleged promise by police).[3] Under these circumstances, defendant's agreement to cooperate suffices to establish his reliance.

¶ 24 In summary, this was a stationhouse interrogation in which investigating officers, knowing that they were about to solicit self-incriminating information from the defendant, not only failed to advise him that his statements could be used against him—a warning that *Miranda* requires—but affirmatively suggested that his statements would *not* be used against him. In response, defendant agreed to speak, and the evidence supports the conclusion both that he relied upon their representation and that his subsequent statements were coerced.

**CONCLUSION**

¶ 25 For the foregoing reasons, we reverse the trial court's suppression of defendant's prearrest statements, but affirm the trial court's finding that defendant's statements during the stationhouse interview were involuntary and may not be used for any purpose at trial.

CONCURRING: RUDOLPH J. GERBER, Presiding Judge, and SARAH D. GRANT, Judge.

---

3. Although the trial court included the statements that defendant made at the scene of the arrest within its broad order of suppression, and although we have reversed that part of the trial court's order, the parties have not argued, nor does it appear, that defendant's roadside statements had any significant tendency to incriminate him.